IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                              *
In Re: MICHAEL T. CLEARY      *
                              *
                              *
  *   *   *   *   *   *   *   *
                              *      Civil Action No. WMN-13-1047
TIMOTHY LIMBERGER et al.      *      Bankruptcy No. RAG-08-10319
                              *      Adversary Case No. 08-00264
          v.                  *
                              *
MICHAEL T. CLEARY             *
                              *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

This matter is before this Court on Appellant Michael T.
Cleary's appeal from a February 28, 2013, Order of the United
States Bankruptcy Court for the District of Maryland concluding
that a portion of his debt to Appellees Timothy and Lisa
Limberger was non-dischargeable under 11 U.S.C. § 523(a)(2)(A).
For the reasons that follow, the decision of the Bankruptcy
Court will be affirmed.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Debtor Michael T. Cleary partially owned, but fully
operated and controlled, a residential construction company,
Trinity Home Builders, L.L.C. (Trinity).  The underlying
adversary action from which this appeal arises relates to a
contract between Trinity and the Limbergers for the construction
of the Limbergers' custom home.  The parties entered into the

contract in May of 2006, for a total contract price of $1,252,278. The contract required a deposit of $62,613.90, leaving a balance of $1,189,664.10 to be financed.

To fund the acquisition of the building lot and the construction of their home, the Limbergers entered into a loan agreement with SunTrust Mortgage (SunTrust) to borrow $1,421,900.00. Under the terms of the loan documents, the transfer of funds from SunTrust to Trinity was to be made for completed work only, and a draw schedule was incorporated into the loan documents to guide the disbursal of funds. Under that draw schedule, each category of work to be done on the home was assigned a percentage of the total loan. For example, the roof framing and sheathing was assigned a total of 5% of the loan. The established procedure for disbursal of the loan funds involved Cleary contacting SunTrust to request a draw; SunTrust sending an inspector to verify the work in place; and, after verification, SunTrust wiring the appropriate percentage of the loan to Trinity.

There came a point in time that the Limbergers were dissatisfied with Trinity's progress on their home and ordered Trinity off the job as of June 19, 2007. By that date, 71% of the draws, or a total of $844,661.51, had been disbursed by SunTrust to Trinity. In addition to the deposit and the draws, the Limbergers had also paid $88,858.10 in change orders to

Trinity. After ordering Trinity off the job, the Limbergers hired a new contractor, Gast Construction, to complete the work on the home. As discussed below, there is a dispute as to what percentage of the work Trinity had performed on its contract and, thus, how much work remained to be completed on the home by the new builder. The Limbergers also obtained a new construction loan from a different bank, Branch Banking and Trust Company (BB&T).

After removing Trinity from the job, the Limbergers filed suit against Cleary in the Circuit Court for Baltimore County in August of 2007. In response, Cleary filed for personal bankruptcy in January 2008, at least in part to stay the Limbergers' state court action against him. The Limbergers filed a Proof of Claim in the main bankruptcy case for $1,000,000 which was never objected to and, thus, is deemed allowed. See 11 U.S.C. § 502(a). They also filed the adversary action giving rise to this appeal, in which they prayed that claims related to certain draws from SunTrust to Trinity be excluded from Cleary's bankruptcy discharge. Prior to trial, the Limbergers limited their claims of non-dischargeability to claims relating to three draws: (1) a $23,793.28 draw for the completion of the water well, (2) a $47,586.57 draw which Cleary represented he was requesting to cover a deposit for windows and trusses, and (3) a $47,586.57 draw which Cleary represented he

was requesting to cover a deposit for cabinetry.  The Limbergers argued that their claims arising from these draws were exempt from discharge in bankruptcy pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The adversary action proceeded to trial.  After receiving three days of evidence on October 26, October 27, and November 12, 2010, the court reconvened on January 24, 2011, to hear closing arguments.  During closing arguments, the Bankruptcy Judge questioned the Limbergers' attorney as to whether there was any evidence in the record that the Limbergers were obligated to repay SunTrust for the funds disbursed to Trinity in these three particular draws or whether they ultimately did repay those funds.  ECF No. 1-34 at 7.  Counsel responded that he believed there was such evidence in the record and the judge instructed counsel to file a memorandum pointing out what that evidence might be.  Id. at 8.

Reviewing the record, it appears that the reason for the Bankruptcy Judge raising the issue of repayment of the SunTrust loan was his awareness of a dispute between the Limbergers and SunTrust.  In addition to their dissatisfaction with Trinity, the Limbergers also took issue with the manner in which SunTrust disbursed loan funds to Trinity and, to resolve that dispute, the Limbergers filed suit against SunTrust in the Circuit Court for Harford County.  That case was settled during the pendency

of the adversary action before the Bankruptcy Court. While the Bankruptcy Court was aware of this action and the settlement, the parties entered into the settlement pursuant to a confidentiality agreement and the terms of the settlement were not revealed to Cleary or to the Bankruptcy Court. See ECF No. 1-40 at 3 n.6.

In response to the Bankruptcy Judge's questions at oral argument, the Limbergers filed on February 23, 2011, a "Supplemental Post-Trial Memorandum," ECF No. 1-27, and also a Motion to Reopen to Receive Undisputed Evidence. ECF No. 1-30. The Limbergers stated that the motion to reopen was being submitted "in an abundance of caution" to "clarify [] the injury and damages caused by [Cleary's] improper conduct." Id. at 1. Submitted with the motion were three exhibits: (1) a settlement statement for a $1,575,200 loan from BB&T to the Limbergers, (2) the loan agreement for that loan, and (3) an affidavit of Lisa Limberger in which she states that she refinanced the SunTrust loan through the new loan with BB&T. ECF Nos. 1-31, 1-32, 1-33. She states further that "SunTrust never returned nor repaid [her] for any of the money that is the subject of the claims in this adversary case against [Cleary]." ECF No. 1-33. On March 8, 2011, Cleary filed an opposition to the motion to reopen.[1]

---

[1] Although not designated as part of the appellate record, on December 6, 2012, counsel for the Limbergers filed a request for

5

On February 28, 2013, the Bankruptcy Court entered a
memorandum opinion and order holding that the claims related to
the draw for the deposit for window and trusses and the draw for
the deposit for cabinetry were non-dischargeable under 11 U.S.C.
§ 523(a)(2)(A), in that Cleary made fraudulent
misrepresentations to SunTrust in order to induce it to disperse
those funds.  The Court, however, found that the claim related
to the draw for the water well was dischargeable.  As to that
claim, the Court opined that, while Cleary may have been just as
dishonest in seeking payment for work related to a well that
Trinity did not dig, SunTrust could not have justifiably relied
on Cleary's representation in that SunTrust, in the course of
financing the purchase of the lot, knew that the well was
already presented when the lot was purchased by the Limbergers.

As to the motion to reopen, the Bankruptcy Judge stated in
a footnote that it would be granted because "it submits
specific, undisputed information that the Court requested during
oral argument."  ECF No. 1-40 at 15 n.22.  Specifically, noted
the Bankruptcy Judge, the motion to reopen explained that "[t]he
Limbergers had to pay the SunTrust loan in full [through] a

---

a status conference to inquire whether the court required
additional briefs or updates on events in the case.  Adv. No.
08-264, ECF No. 109.  Counsel for Cleary responded that a status
conference was unnecessary and that he was "confident that [the
Bankruptcy Court] has all the evidence and argument necessary to
make a decision in this case."  Id., ECF No. 110.

refinancing loan from [BB&T]." Id. In that same footnote, the Bankruptcy Judge also opined that Cleary "has had an equal opportunity to rebut the truth of that information but has not done so." Id. An order granting the motion to reopen was entered the next day.

Debtor Cleary raises the following three issues on appeal: (1) whether the Bankruptcy Court erred in granting the motion to reopen the case and admitting the three exhibits submitted with that motion into evidence; (2) whether the Bankruptcy Court erred in finding that the draw requested for the window and truss deposit was non-dischargeable; and (3) whether the Bankruptcy Court erred in finding that the draw requested for the cabinetry deposit was non-dischargeable. The arguments raised as to those last two issues center on whether the Limbergers were actually damaged by these disbursals.

## II. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's findings of facts for clear error and conclusions of law de novo. See Duncan v. Duncan (In re Duncan), 448 F.3d 725, 728 (4th Cir. 2006). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Montgomery County v. Barwood, Inc., 422 B.R. 40, 44 (Bankr. D. Md. 2009) (citing Anderson v.

Bessemer City, 470 U.S. 564, 573 (1985)) (internal quotation marks omitted). "A reviewing court will not reverse simply because it is convinced that it would have decided the case differently." Citizens Bank of Md. v. Broyles (In re Broyles), 55 F.3d 980, 983 (4th Cir. 1995) (citing Anderson, 470 U.S. at 573) (internal quotation marks omitted). As to the decision to reopen the case and admit additional evidence, the parties agree that such a decision is entrusted to the discretion of the trial court and is therefore reviewed under an abuse of discretion standard. See Gathright v. St. Louis Teachers' Credit Union, 97 F.3d 266, 268 (8th Cir. 1996).

## III. DISCUSSION

Section 523(a) of the Bankruptcy Code provides, in pertinent part, that a discharge under section 727 "does not discharge an individual debtor from any debt . . . (2) for money . . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud. . . ." To establish that a claim is non-dischargeable under § 523(a)(2)(A), a creditor must establish five elements: (1) the debtor made a representation; (2) the debtor knew at the time the representation was made that it was false; (3) the debtor made the representation with the intent and purpose of deceiving the creditor; (4) the creditor justifiably relied upon the false representation; and (5) the creditor suffered harm as the proximate result of the

8

representation.  See Dubois v. Lindsley (In re Lindsley), 388
B.R. 661, 668 (D. Md. 2008).  In order to protect the purpose of
providing debtors with a fresh start through bankruptcy,
exceptions to discharge such as those provided for in § 523 are
strictly construed against the creditor, and creditors must
prove their allegations by a preponderance of the evidence.  In
re Rountree, 478 F.3d 215, 219 (4th Cir. 2007).

In this appeal, Cleary raises no serious challenge as to
the first four elements, nor could he.  The Bankruptcy Court,
which had the opportunity to observe Cleary's demeanor in his
testimony both at trial and in videotaped deposition, concluded
in no uncertain terms that Cleary was "evasive, argumentative,
contradictory and calculating."  ECF No. 1-40 at 11.  In
reviewing findings of fact made by a bankruptcy court, this
Court must give "due regard" to "the opportunity of the
bankruptcy court to judge the credibility of the witnesses."
Bankr. R. 8013.

As to the draw for the alleged deposit for windows and
trusses, the court simply did not credit Cleary's testimony
that, when he requested the draws, his suppliers were requiring
deposits but, once he received the transfer of funds, the
suppliers had changed their policies and those deposits were no
longer required.  Id. at 18-19.  The court also noted that it
was undisputed that the invoice submitted by Cleary to SunTrust

to support his request for the window deposit was actually an invoice prepared for a different project.  Id. at 7.  The court concluded that Cleary intentionally misrepresented the need for these illusory deposits in order to use the requested funds for his own purposes.  Id. at 19.

As to the draw for the alleged deposit for cabinetry, the Bankruptcy Court found even clearer evidence of fraud.  The court concluded that, not only were no deposits required from Trinity for the cabinetry, but that Cleary used altered invoices to support his request to SunTrust.  The evidence showed that Lisa Limberger had herself paid the deposit on the cabinets and the supplier handwrote "paid in full" on the deposit invoices. Cleary then took those invoices, whited out "paid in full," and submitted those altered invoices to SunTrust.  While Cleary denied doing this in his testimony at deposition and trial, he had admitted whiting out the handwritten notation during his Section 341 meeting of creditors.  Id. at 10.  The Bankruptcy Court concluded that Cleary was telling the truth at the creditors meeting, but only changed his story when he realized his admission would result in continued liability to the Limbergers.  Id.

Given that the Bankruptcy Court's findings as to the first four elements of proof are essentially unassailable on appeal because they turn on the Bankruptcy Court's assessment of

credibility, Cleary devotes his attention to challenging the
Bankruptcy Court's conclusion that the Limbergers were in any
way harmed by his alleged deceptions.  As to the draw for the
window and truss "deposit," Cleary notes that the draw schedule
allotted 5% of the loan for "Roof Framing and Sheathing" and 4%
for "Exterior Windows and Doors."  After requesting and
receiving 2% from each category for the alleged deposits, he
received in a separate draw request the balance from those two
categories, but no more.  He maintains that, since photographs
of the home show that the windows and trusses were installed
before Trinity was thrown off of the job, the Limbergers
suffered no harm from the "deposit" draw.

Cleary's arguments regarding the draw for the cabinetry
deposit is more problematic in that, not only had Lisa Limberger
already paid the deposit for which he requested a draw, but it
is also undisputed that no cabinets were installed before
Trinity left the job.  To posit an absence of proven damages,
Cleary expands his argument to the scope of the entire SunTrust
loan.  He notes that, before leaving the job, Trinity had
received draws equal to 71% of the loan.  Based on the
proposition that the house was 70% complete at the time, Cleary
suggests that the Limbergers suffered damages of, at most, 1% of
the loan, or $11,896.64.

As to how much of the work on the house was complete when Trinity left the job, Cleary represents that "the Bankruptcy Court found that the house was 70% complete as of that date." ECF No. 3 at 26 (quoting ECF No. 1-40 at 20 n.28). What the Bankruptcy Court actually said in the footnote cited by Cleary was that, "[t]he evidence also established that the Limbergers were forced to hire another company to complete the project with the work about seventy percent (70%) complete at the time of Trinity's dismissal." ECF No. 1-40 at 20 n.28 (emphasis added). The court did not explain what evidence established this estimated percentage and, more importantly, the figure was not used by the court for any calculation of damages.

While the Bankruptcy Court gave no indication as to how this estimated percentage was determined (as there was no reason for it to do so), Cleary suggests that the draw schedule and inspection reports support that figure. As of May 30, 2007, two weeks before Trinity was ordered off the job, SunTrust had distributed 71% of the loan to Trinity based upon the inspection reports that had been submitted to it. On June 20, 2007, SunTrust's inspector authorized the release of an additional 3% for work completed in additional categories.[2] Subtracting the 4% for cabinetry that clearly was not completed from the 74% that

---

[2] The Limbergers objected to this authorization, so this 3% was never distributed.

12

was authorized, Cleary concludes that 70% of the work was completed before Trinity was dismissed.

The draw schedule and inspection reports, however, are not an appropriate proxy for the percentage of work actually completed on the home. Cleary's own counsel acknowledged in his briefing and in his closing argument before the Bankruptcy Court that draw schedules are "generic" and do not reflect the costs for any particular house. Specifically, when arguing that there was nothing improper in Cleary requesting 2% of the loan for a well that Trinity did not dig, he stated, "[t]he percentages of the draw schedule typically do not reflect the actual cost of the work because it is a generic draw schedule." ECF No. 1-22 (Cleary's Post-Trial Mem.) at 8 n.1 (citing testimony of Thomas Redfern, ECF No. 1-17 at 222); see also ECF No. 1-34 (Closing Arguments) at 59.

Furthermore, there was significant evidence in the record that less than 70% of the work was completed. The Bankruptcy Court found, based in part on the testimony of Cleary's sister regarding Trinity's "historic inability to pay its debts in the ordinary course of business," ECF No. 1-40 at 11, that Cleary took the funds he received from SunTrust and used them to cover expenses on other projects, including expenses related to the construction of his sister's home. Consistent with that finding, Cleary testified that, once funds were received by

13

Trinity, he believed that they could be used on any project in which Trinity was involved. ECF No. 1-19 at 35, 82. That Cleary may have later paid for the trusses or windows on the Limbergers' home from a subsequent draw from SunTrust obtained for some other category of work, as he claims he did, does not eliminate the Limbergers' injury from the original fraud. As Lisa Limberger testified, shifting subsequent draws back to cover categories that should have been completed using previous draws created a "domino effect," still leaving insufficient funds to finish the house. ECF No. 1-15 at 121-22.

The Bankruptcy Court clearly embraced that theory of damages:

> What the evidence showed with certainty, and what this Court finds, is that Mr. Cleary intentionally misrepresented the need for these deposits in order to use the Limberger's construction line of credit as if it were Trinity's (or perhaps his own) to do with as he chose. Whether the supplies were actually paid for by additional draws against the SunTrust financing at a later date (and charged <u>again</u> to the Limbergers' account) is irrelevant. What matters is that this particular draw was induced by a false representation and the money was not used for the purpose represented. The correct outcome cannot be to saddle the Limbergers with double liability for a single set of materials or portions thereof. The damages are found in the illegitimate increase of the Limbergers' loan balance for money spent on a purpose unrelated to the [Limbergers' home.]

ECF No. 1-40 at 19 (emphasis in original).

This Court also notes that there was other evidence in the record that far less than 70% of the home was completed by

Trinity.  In the course of Lisa Limberger's testimony before the
Bankruptcy Court, an affidavit that she had submitted with a
summary judgment motion in the Harford County case against
SunTrust was admitted into evidence by Cleary's counsel.  ECF
No. 1-15 at 81-83.  One of the attachments to that affidavit was
a chart of damages that indicated that the Limbergers had to pay
Gast Construction $620,407.67 to finish the same work they had
contracted Trinity to perform.  ECF No. 1-28 at 2.  When Trinity
left the project, there was only about $345,000 left
undistributed from the SunTrust loan.  Thus, this Court finds no
error, much less clear error, in the Bankruptcy Court's finding
that the disbursal of the funds induced by Cleary's
misrepresentations increased the Limbergers' liability to
SunTrust.

Cleary raises one additional argument related to damages
that is intertwined with his arguments regarding the Bankruptcy
Court's reopening of the record.  Cleary now maintains that
there was no evidence admitted during the trial that the
Limbergers actually paid off the SunTrust loan.  While, as the
Bankruptcy Court found, Cleary's requests for illusory deposits
may have increased the Limbergers' liability under the SunTrust
loan, if they never paid off that loan, Cleary contends they
were not harmed by his actions.  He then argues that it was
improper for the Bankruptcy Court to reopen the record to allow

the Limbergers to establish that they had, indeed, paid off the
SunTrust loan in full.

This Court finds this argument somewhat spurious.  There
was considerable evidence in the trial concerning the SunTrust
loan and the SunTrust loan documents were part of the record.
As under any construction loan, the Limbergers would incur
liability under the terms of those documents for any advance on
the loan.  There was also considerable evidence and discussion
concerning the Limbergers' suit against SunTrust.  Had the
Limbergers not paid off the loan, there would have been no
reason for them to file suit against SunTrust.  Thus, even
without the supplemental evidence submitted with the motion to
reopen, there was sufficient evidence in the record for the
Bankruptcy Court to draw the only possible reasonable inference
from the evidence, i.e., that the Limbergers had paid off the
SunTrust loan.

This Court notes that, neither in the course of the trial
nor in the post-trial, pre-closing argument briefing, did Cleary
focus on this particular argument.  Instead, Cleary seized on it
only after the Bankruptcy Court, on its own, raised the issue in
the course of closing arguments.  The Bankruptcy Court, however,
only raised the issue because of its awareness of the settlement
of the Limbergers' suit against SunTrust.  Because the SunTrust
suit challenged these same draws, the Bankruptcy Court was

apparently concerned about the possibility that claims based on these disbursals may have been compromised as part of the settlement with SunTrust.

The Bankruptcy Court had questions about the settlement because, while the fact of settlement was disclosed at trial, the terms were not. In the course of cross-examining Lisa Limberger, Cleary's counsel had her affirm that the Limbergers were complaining about the same three disbursements in the SunTrust suit as they were in this adversary action. ECF 1-15 at 89. When he then asked the amount for which the SunTrust suit was settled, the Limbergers' counsel objected on the ground that the settlement was subject to a confidentiality agreement. Id. Cleary's counsel responded that, since the suits complained about the same things, it was "relevant to know what they settled the case for to see how they were compensated for their alleged damages." Id. at 90. The Limbergers' counsel never questioned the relevancy but stated that he could not reveal the actual terms of that settlement unless ordered to do so by the court. Id. If ordered to, he indicated he would be "happy to do so." Id. at 91.

The Bankruptcy Court returned to the issue a few moments later and squarely put the burden on Cleary's counsel to introduce evidence of the settlement if he intended to argue

that claims related to these draws were somehow already

compensated for:

> THE COURT: Mr. Kotz (Cleary's counsel), let me just back up so the record is clear on that. So if you want to press it, then it's going to be up to you to bring that document because that is the best evidence of the settlement . . . .

> If we have to go through a preliminary hurdle thing to get to the point where we can decide whether or not we look at the document or not, we'll tee that up later. Okay?

> MR. KOTZ: He's in control of the document. Did you indicate I had to bring it?

> THE COURT: You're the one that wants to establish that there was a settlement.

> MR. KOTZ: Right. I asked the question and then Mr. Gann (Limbergers' counsel) said there's a settlement agreement that's confidential, so obviously no one would have that except the parties.

> THE COURT: Right, and the settlement agreement is the best evidence of settlement.

> MR. KOTZ: Yes.

> THE COURT: So you're going to have to be the one that wants, desires to put the agreement into evidence.

> MR. KOTZ: Okay. We would have to, I presume, have a preliminary – we'd have to show it to you because I don't want to look at it.

> THE COURT: What I'm saying is that the burden would be on you to put the document into evidence through this witness. Now, whatever that means in terms of what's gone on before in discovery deadlines and exhibit lists and all of that, I'm not ruling now but he's got the right to raise all those issues. If you call him up after this hearing or talk to him

during lunch and say, Mr. Gann, I want the document,
then he's got the right to reserve all those
objections to put it into evidence.

        MR. KOTZ: Okay.

        THE COURT: Are you with me?

        MR. KOTZ: I understand.

Id. at 92-94.

Cleary's counsel apparently made no effort to obtain the

settlement agreement and made no further argument regarding the

settlement until the issue was raised by the Bankruptcy Court in

closing argument.  If fact, during closing argument, Cleary's

counsel essentially conceded that the Limbergers paid off the

SunTrust loan.  In discussing the 1% of the loan that, by

Cleary's counsel's calculations was the amount of overpayment,

the following exchange occurred:

        THE COURT: Is there any dispute about whether or
not they had to pay this money to the bank?

        MR. KOTZ: What did you say – there is a dispute?

        THE COURT: Is there any dispute – are you
disputing whether they had to pay this $118,000 to the
bank?

        MR. KOTZ: Oh, they had to pay back the full 71
percent.  That was their loan when they got a new
loan, they had to pay that 71 percent – that was the
loan payoff, whoever the bank paid.  No dispute on
that.

ECF No. 1-34 at 76.

Looking at the record as a whole, this Court concludes that the Limbergers had proven their damages without the need to supplement the record with the three exhibits submitted with the motion to reopen. Draws on a construction loan create liability on the homeowner by operation of the terms of the loan agreement. That was never contested at trial. If Cleary wished to argue that this liability was reduced by settlement with a third party or otherwise, it was his duty to introduce evidence to support that argument and the Bankruptcy Court clearly explained that duty.

To the extent that the Bankruptcy Court, by granting the motion to reopen the record, permitted the Limbergers to offer further support to establish their payment of the SunTrust loan, this Court finds that the Bankruptcy Court did not abuse its discretion by doing so. In determining whether a trial court abused its discretion in reopening a case, appellate courts consider whether: "(1) the evidence sought to be introduced is especially important and probative; (2) the moving party's explanation for failing to introduce the evidence earlier is bona fide; and (3) reopening will cause undue prejudice to the nonmoving party." Levy v. Lexington County, 589 F.3d 708, 714 (4th Cir. 2009).

In this instance, the first consideration is not determinative. Because the Court finds that the evidence

already in the record sufficiently established the fact for which the supplement evidence was offered, the evidence was not especially important or probative. It did, however, serve to confirm what was readily inferable from other evidence in the record. As to the second consideration, the Court finds that the Limbergers' explanation for failure to offer this evidence earlier was bona fide. The evidence goes to an issue that was not in dispute until the question was raised by the Bankruptcy Court in closing arguments. In their post-closing briefing, ECF No. 1-27, the Limbergers responded to the court's question and pointed to the evidence in the record supporting a finding that the SunTrust loan was paid off. Out of an abundance of caution, they also offered additional evidence on an issue that, heretofore, had not been in dispute.

Finally, the Court finds that Cleary was not unduly prejudiced by the admission of this evidence. As noted above, this evidence is redundant to evidence already in the record. Furthermore, while Cleary complains that he was unable to test the evidence by cross-examination, the Court notes that he never asked for that opportunity and he easily could have done so. In opposing the motion to reopen, he could have asked for the alternative remedy that, should the court allow the evidence, he be permitted to further cross examine Lisa Limberger. The Court suspects that he did not do so for the same reason he did not

pursue the admission of the settlement agreement, _i.e._, he was well aware that the Limbergers paid off the SunTrust loan as his counsel acknowledged.

## IV. CONCLUSION

For these reasons, the February 28, 2013, decision of the United States Bankruptcy Court for the District of Maryland concluding that a portion of Debtor Michael T. Cleary's debt to Timothy and Lisa Limberger was non-dischargeable under 11 U.S.C. § 523(a)(2)(A) will be affirmed. A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: December 18, 2013